UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>Plaintiff,<br><br>v.<br><br>CENTURION OF IDAHO, LLC; C/O DINIUS; and KAYLA MILLER,<br><br>Defendants. | Case No. 1:23-cv-00260-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Michael T. Hayes, a prisoner in the custody of the Idaho Department of Correction ("IDOC"), is proceeding pro se and in forma pauperis in this civil rights matter.

Plaintiff claims that Defendants violated his right to adequate medical care under the Eighth Amendment. Plaintiff alleges that he did not receive timely refills of certain medications. *See Sec. Compl.*, Dkt. 8. Specifically, Plaintiff was allegedly "run out" of his medications on 14 separate occasions from October 2021 to April 2023. *Id*. at 17.

Plaintiff was initially allowed to proceed on his Eighth Amendment claims against the following Defendants: (1) Centurion of Idaho, LLC ("Centurion"), the private entity providing Idaho inmates with medical treatment under contract with the IDOC, (2) Correctional Officer Dinius; and (3) Kayla Miller. *Init. Rev. Order*, Dkt. 14, at 4, 10, 12–13. Plaintiff's claims against Miller were later dismissed for lack of service, and the Court has since granted summary judgment in favor of Defendant Dinius. Dkts. 25, 50.

Now pending is a Motion for Summary Judgment filed by Centurion, the only remaining Defendant. Dkt. 58. Also pending is Plaintiff's Motion for Summary Judgment against Centurion. Dkt. 61. The parties have filed responsive briefing, and the motions are ripe for adjudication.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, and for the reasons that follow, the Court will grant Centurion's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

**STANDARD OF LAW GOVERNING SUMMARY JUDGMENT**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. In other words, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In resolving a summary judgment motion, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the

facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id*.

The moving party bears the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that the material facts are not in dispute, the moving party may cite to particular parts of materials in the record or show that the non-moving party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Liberty Lobby*, 477 U.S. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. In other words, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Id*. at 252. Statements in a brief, unsupported by the record, cannot be used to create a dispute of fact. *Barnes v. Indep. Auto.*

*Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

The Court must consider "the cited materials" in considering a motion for summary judgment, but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (stating that, once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment.") (internal quotation marks omitted). That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

In opposing a motion for summary judgment, the non-moving party must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order"). If the non-moving party fails to produce such evidence, or if the evidence produced is not enough to create a genuine issue of material

fact, the Court "is not required (or even allowed) to assume the truth of the … allegations in the complaint." *Butler*, 370 F.3d at 963.

Only admissible evidence may be considered on summary judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence," does not create a genuine dispute of material fact. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences that can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

In cases involving pro se inmates, courts liberally construe the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, though pro se inmates are exempted "from *strict*

compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto*, 882 F.3d at 872.

## FACTUAL BACKGROUND

This section includes facts that are undisputed and material to the resolution of the issues in this case.

The Court will first consider Centurion's Motion for Summary Judgment. Therefore, where material facts are in dispute, the Court will use the version of the facts set forth by Plaintiff, insofar as that version is not blatantly contradicted by clear documentary evidence in the record. *See Scott*, 550 U.S. at 380.

Clinical Pharmaceutical Solutions ("CPS"), a Tennessee company, provides pharmacy services to Centurion. That is, Centurion does not have its own pharmacy but, instead, contracts that service out to CPS. *Centurion Stmt. of Mat. Facts in Supp. of Centurion's Mot. Summ. J.* ("*CSOMF*"), Dkt. 58-2, ¶ 5.

All of Plaintiff's medications relevant to this suit were keep-on-person ("KOP") medications and were provided for 30-day periods. "KOP" means that Plaintiff possessed the medication himself. Refills for KOP medications cannot be given until the previous prescription period expires. For example, if an inmate with KOP medications uses too much of the medication or loses some of the medication, the inmate cannot receive a refill until the 30-day period ends. Early refills are not permitted. *Id*. ¶ 7.

On October 9, 2021, Plaintiff submitted a Health Service Request ("HSR"), seeking

a medical refill. A week later, CPS accepted Plaintiff's order for Lisinopril.[1] *Id.* ¶¶ 8–9.

Plaintiff also sought a refill of Metformin[2] in October 2021. *Sec. Compl.* ¶ 3. CPS placed the refill "on hold," meaning that CPS would not refill the medication at that time. *CSOMF*. ¶ 10. Plaintiff went without his Metformin for 8 days. *Sec. Compl.* ¶ 3. Plaintiff also sought a refill of acetaminophen—a non-prescription pain reliever. Like Plaintiff's Lisinopril, CPS accepted the acetaminophen refill, but the Metformin refill remained on hold. *CSOMF* ¶ 11.

On November 1, 2021, Plaintiff asked for another refill of Lisinopril, as well as refills of Lipitor,[3] Glipizide,[4] and aspirin. These medications—like the Metformin—were placed on hold by CPS. *Id.* ¶ 11. On November 13, Plaintiff again sought refills of Metformin and acetaminophen. The acetaminophen refill was accepted, but the Metformin was still on hold.

The medical records show that, by November 20, 2021, CPS had provided the refills of all of these medications—Metformin, Lisinopril, Lipitor, Glipizide, and aspirin. *Id.* ¶ 14. At that point, Plaintiff had been without his Metformin for slightly more than one month, and his other medications for almost three weeks.

[1] Lisinopril is used to treat high blood pressure. *See* https://www.mayoclinic.org/drugs-supplements/lisinopril-oral-route/description/drg-20069129.
[2] Metformin is prescribed to treat type 2 diabetes. See https://www.mayoclinic.org/drugs-supplements/metformin-oral-route/description/drg-20067074.
[3] Lipitor helps to lower cholesterol and triglycerides. *See* https://www.mayoclinic.org/drugs-supplements/atorvastatin-oral-route/description/drg-20067003.
[4] Glipizide, like Metformin, is a diabetes medication. *See* https://www.mayoclinic.org/drugs-supplements/glipizide-oral-route/description/drg-20072046.

Meanwhile, On November 18, Plaintiff requested a refill of Tamsulosin.[5] This refill was accepted, but Plaintiff states he still lacked the medication for 13 days. *Id*. ¶ 13; *Sec. Compl*. ¶ 3. Plaintiff sought a general "Medication Refill" on November 23, 2021, but by that date CPS had already provided previously requested medications, and Plaintiff received all refills by November 30. *CSOMF* ¶ 15. Similarly, Plaintiff asked for a refill of acetaminophen on December 23, but the record shows that CPS had provided all of Plaintiff's requested refills the day before. *Id*. ¶ 16.

Plaintiff submitted a grievance in November about his medications not being refilled in a timely manner. *Ex. 5 to Hayes Decl*., Dkt. 67-2, ECF pp.11–12. Prison officials responded and apologized, stating that the cause for the delays was that the prison's pharmacy manager—an IDOC employee responsible for "ordering, checking in[,] and distributing … all medications"—had left their position. *Id*. The responsibilities of the pharmacy manager were reassigned to other staff until a replacement could be hired. *Id*. By January 2022, this prison staffing issue still had not been resolved. *Id*.

On December 19, 2021, Plaintiff ran out of his Metformin and Tamsulosin. He sought a refill of these medications four days later. Plaintiff received these medications on December 30, one week after he asked for them; he also received a refill for Glipizide. Plaintiff was given a refill for acetaminophen the next day. *CSOMF* ¶¶ 17–19; *Sec. Compl*. ¶ 4.

On January 21, 2023, Plaintiff sought refills for Glipizide, Metformin, Tamsulosin,

---

[5] Tamsulosin is used to treat individuals with enlarged prostates. *See* https://www.mayoclinic.org/drugs-supplements/tamsulosin-oral-route/description/drg-20068275.

and acetaminophen. This request came too early—less than 30 days after Plaintiff received his last refills on December 30. *CSOMF* ¶ 19. Plaintiff also alleges that he went without Atorvastatin (Lipitor) and Lisinopril for 12 days, and without aspirin for 17 days. *Sec. Compl*. ¶ 4.

Meanwhile, Plaintiff asked for refills of Lipitor and Lisinopril on January 5, 2022. He received these medications the next day. *CSOMF* ¶ 18. Plaintiff also alleges that he ran out of Metformin, acetaminophen, and Tamsulosin on January 30, 2022. *Sec. Compl*. ¶ 5. It is unclear how long Plaintiff went without these medications at that time.

Plaintiff next ran out of his Metformin on March 4, 2022. He did not receive his required refill until a month later—on April 4 or 5, 2022. *Pl. Stmt. of Mat. Facts* ("*PSOMF*"), Dkt. 61-3, ¶ 2; *Hayes Decl*., Dkt. 67-2, ¶ 5.

In the meantime, on March 14, 2022, Plaintiff sought refills for Lipitor, Lisinopril, and aspirin. Plaintiff also complained that he had run out of his pain medication. Plaintiff's aspirin, Tamsulosin, and Glipizide were refilled, but CPS placed the Lipitor and Lisinopril refills on hold. *CSOMF* ¶¶ 20–21.

On March 28, 2022, Plaintiff stated he was still out of his diabetes medications and acetaminophen. Plaintiff's Metformin was accepted for refill, but the Glipizide was placed on hold because it was too early; Plaintiff had already had this medication refilled two weeks earlier. *Id*. ¶ 22. On April 10, 2022, Plaintiff's refills for Glipizide and Lipitor were re-approved, and all other medication refills had also been approved by that date. *Id*.

Plaintiff asked for unidentified refills and pain medication on April 25, 2022. Several days later, CPS accepted Plaintiff's requests for refills of Tamsulosin and aspirin.

On May 3, Plaintiff complained that he was still out of aspirin, and he received this medication the next day. *Id*. ¶¶ 23–24.

On May 25, 2022, Plaintiff complained that he was out of seven different medications. However, by that date, CPS had already provided all of Plaintiff's medication refills. *Id*. ¶ 25.

CPS again provided requested refills on June 15. Notwithstanding that Plaintiff had received these refills, Plaintiff submitted an HSR only ten days later, claiming he needed a refill of his pain medication. Plaintiff again requested pain medication in July, and by July 10, 2022, CPS had once again provided all of Plaintiff's required refills for the next 30-day period. *Id*. ¶¶ 26–27.

It was not until September 29, 2022, that Plaintiff again asked for pain medication. Plaintiff reiterated this request on October 5, but the medication had already been ordered. *Id*. ¶ 28. Plaintiff made several more requests for pain medication, and by November 16, 2022, CPS had refilled all of Plaintiff's medications. *Id*. ¶ 29.

Plaintiff requested a refill for acetaminophen on December 2, 2022, 9 days before the medication was set to run out. *Sec. Compl*. ¶ 11. On January 4, 2023, not having received this refill, Plaintiff asked for a dose from the pill cart. Nursing staff did not give him one. *Id*. Plaintiff received a refill of aspirin the next day, and the acetaminophen a day or two after that. *Id*. ¶¶ 12–13; *Sec. Compl*. ¶ 13.

Plaintiff submitted a grievance about not being provided timely refills of his pain medication and also complained that nursing staff would not provide him with medication from the pill cart. Staff responded, stating that KOP medication, like Plaintiff's pain

medication, could not be dispensed from the pill cart because inmates already have this medication. Plaintiff was also informed, however, that if he was out of his KOP acetaminophen, he could submit an HSR for sick call, be seen by a provider, and receive doses from that provider until the KOP medication was refilled. *CSOMF* ¶ 30.

Plaintiff requested a refill of acetaminophen on January 27, 2023, and a refill of Glipizide on January 30. *Id*. ¶ 31; *Sec. Compl*. ¶ 14. The refill for the Glipizide, as well as refills for Metformin, Tamsulosin, and aspirin had already been ordered a week before, but Plaintiff's refill of acetaminophen was placed on hold by CPS. *CSOMF* ¶ 31. Nursing staff continued to refuse to dispense doses of this medication to Plaintiff from the pill cart. *Sec. Compl*. ¶ 14. Other than the acetaminophen, Plaintiff received all of his requested refills by February 8, 2023, a little more than a week after Plaintiff's requests. Nonetheless, Plaintiff requested a refill of an unidentified medication two days later. *CSOMF* ¶ 32.

On February 11, refills of Plaintiff's acetaminophen and Lisinopril were ordered, and Plaintiff received his next set of refills (again, other than acetaminophen) on February 15, 2023. Plaintiff received the acetaminophen about one week later, on February 21 or 22. *Id*. ¶¶ 33–34; *Sec. Compl*. ¶ 15.

Plaintiff requested a refill of acetaminophen,on March 14, 2023, 10 days before the medication was set to run out. Though Plaintiff ran out of this medication on March 24, he did not receive his refill until April 5, 2023. *Sec. Compl*. ¶ 16.

Less than two weeks later, on April 18, 2023, Plaintiff again asked for a refill of acetaminophen, but it was placed on hold. Other than the acetaminophen, which had been requested too early, Plaintiff received all of his refills by April 21, 2023, *CSOMF* ¶ 35,

which is the latest date identified in the operative complaint. Plaintiff also went without his Fiber-Lax tablets for an unspecified period of time in April 2023. *Sec. Compl*. ¶ 17.

Plaintiff claims that the multiple delays in refilling his medications, as well as nursing staff's refusal to provide Plaintiff with medication from the pill cart when he requested it, caused Plaintiff's medical condition to deteriorate from that of a non-insulin-dependent diabetic to an insulin-dependent diabetic. Plaintiff bases this opinion on the fact that, during the 30-day period of time from March to April 2022 when Plaintiff went without his Metformin, his A1C[6] "rocketed up to a high 12.2." *PSOMF* ¶¶ 2–5; *see also Hayes Decl*., Dkt. 67-2, ¶¶ 5–6, and *Ex. 1–4*.

**DEFENDANT CENTURION'S MOTION FOR SUMMARY JUDGMENT**

Because Centurion would not bear the burden of proof at trial, it may prevail on its Motion for Summary Judgment simply by "pointing out … that there is an absence of evidence to support [Plaintiff's] case." *Celotex Corp.*, 477 U.S. at 325. If Centurion does so, Plaintiff "must counter by producing evidence of his … own." *Butler*, 370 F.3d at 963.

For the following reasons, the Court concludes that Centurion has met its initial burden of showing that Plaintiff cannot satisfy the standards for his Eighth Amendment medical treatment claims. Because Plaintiff has not rebutted that evidence, Centurion is entitled to summary judgment.

**1. Standards of Law Applicable to Plaintiff's Claims**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a

---

[6] An A1C test shows a patient's "average blood sugar level for the past 2 to 3 months." *See* https://www.mayoclinic.org/diseases-conditions/diabetes/diagnosis-treatment/drc-20371451.

plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To bring a § 1983 claim against a local governmental entity or a private entity performing a government function—such as Centurion—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a

traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment and guarantees prisoners the right to minimally adequate conditions of confinement. To state a claim under the Eighth Amendment, a prisoner must plausibly allege that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has

defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, … [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once

prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). That is, a delay in medical treatment can violate an inmate's right to adequate prison medical care. However, an inmate asserting an Eighth Amendment violation must establish that the delay caused further harm. *McGuckin*, 974 F.2d at 1060.

Causation is not established by a non-medically trained plaintiff's belief. Instead, a plaintiff must generally present expert medical testimony that a defendant's action or inaction caused a deterioration in the plaintiff's medical condition. *See, e.g., McGiboney v. Corizon*, No. 1:18-cv-00529-DCN, Dkt. 89, at 37–38, 2021 WL 1092222, *17 (D. Idaho Mar. 22, 2021) ("Given McGiboney's complicated vascular and neurological condition, expert testimony is essential to understanding … whether [the] decisions [of prison medical providers] caused McGiboney harm" for purposes of Eighth Amendment claim). Though there may be cases in which causation is obvious without the need for expert medical testimony, such cases are quite rare.

Medical malpractice or negligence does not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). "If a [prison medical provider] should have been aware of the risk, but was not, then the [provider] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective

knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Deliberate indifference focuses on a defendant's intent. Therefore, a defendant who does not have full control over the circumstances of which the plaintiff complains cannot be said to act with deliberate indifference if that defendant "accomplished what could be accomplished within the limits of his authority." *Williams v. Bennett*, 689 F.2d 1370, 1387–88 (11th Cir. 1982). Personal liability under § 1983 "cannot be based on prison conditions beyond the control of a defendant." *Pinto v. Nettleship*, 737 F.2d 130, 133 (1st Cir. 1984).

**2. Centurion Is Entitled to Summary Judgment**

As Centurion has pointed out, no evidence in the record tends to suggest that Centurion had a policy, custom, or practice of delaying medication refills. At least some of the "delays" occurred because Plaintiff requested refills too early. Moreover, as for the delays that were not attributable to Plaintiff's early requests, the record supports a reasonable inference only that it was either (1) the prison's failure to replace the pharmacy manager, or (2) CPS's placing medications on hold, that caused Plaintiff's refills to be delayed—not any custom or practice on the part of Centurion.

Centurion has no authority over prison staffing. *See Williams*, 689 F.2d at 1387–88; *Pinto*, 737 F.2d at 133. Further, though Centurion is responsible for providing medically necessary treatment to inmates, the evidence shows—at most—that Centurion might have been negligent in failing to ensure that CPS, its contracted provider of pharmacological services, timely refilled Plaintiff's medications. This is insufficient to establish deliberate indifference. *See Farmer*, 511 U.S. at 835; *Broughton*, 622 F.2d at 460.

Moreover, even if Centurion did have a policy, custom, or practice resulting in the delay of Plaintiff's medication refills, the record is devoid of any evidence that these delays were the proximate cause of the deterioration of Plaintiff's health. Accordingly, the burden of production shifts to Plaintiff to establish a genuine dispute of material fact. He has failed to do so.

Plaintiff offers merely his own belief that Centurion had a policy or practice of delaying medication refills. He has submitted no evidence to support this belief.

Plaintiff has also failed to offer any expert testimony to support his claim that he became insulin-dependent *because of* the delays in receiving his medication refills. The Court cannot simply assume causation on this complex medical issue. Without any medical evidence supporting Plaintiff's belief as to the cause of his becoming insulin-dependent, the Court cannot conclude that a genuine dispute of material fact exists at to that issue.

For these reasons, Defendants are entitled to judgment as a matter of law.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff is not entitled to summary judgment if, considering the evidence in the light most favorable to Centurion, the Court concludes that a genuine dispute of material fact exists. *See Scott*, 550 U.S. at 378 ("[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.") (internal quotation marks and alterations omitted). As explained above, however, even taking the evidence in the light most favorable to *Plaintiff*, the Court concludes, as a matter of law, that Plaintiff cannot prevail on his claims against Centurion. Accordingly, Plaintiff's Motion for Summary Judgment will be denied for the same reasons

discussed above with respect to Centurion's Motion for Summary Judgment.

**ORDER**

**IT IS ORDERED:**

1. Defendant Centurion's Motion for Summary Judgment (Dkt. 58) is GRANTED.

2. Plaintiff's Motion for Summary Judgment (Dkt. 61) is DENIED.

DATED: September 22, 2026

David C. Nye
U.S. District Court Judge